UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| PATRICK JON BERTHELOT, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 7:13-cv-01020-LSC-HGD |
| ) | |
| ERIC F. BAILEY, et al., ) | |
| ) | |
| Defendants ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Patrick John Berthelot, hereinafter referred to as the plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. §1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at the Tuscaloosa County Jail in Tuscaloosa, Alabama. Plaintiff names as defendants the Tuscaloosa County Jail, Maude Whatley, Chief of Operations Eric F. Bailey, Officer Thomas, and Deputy Smith. (Amended Complaint Doc. 5). Plaintiff seeks declaratory and injunctive relief, as well as damages for pain and suffering. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a

preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service. Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## DISCUSSION

On June 12, 2012, around 12:30 p.m., while incarcerated in the Tuscaloosa County Jail, the plaintiff broke his ankle. The plaintiff immediately notified jail personnel of his injury and was taken to the medical unit around 4:00 p.m. (Doc. 5, p. 2). Officer Thomas escorted the plaintiff to the medical unit, but refused to provide

him a wheelchair and made him walk on his broken ankle. (*Id.*) The plaintiff was examined by Nurse Dahn, who opined that the ankle was probably just sprained and ordered treatment with Tylenol and ice packs. (*Id.*) The next morning, Nurse Diane, who was delivering morning medications, stated that the ankle was definitely broken and told jail personnel that the plaintiff needed to go to the hospital. (*Id.*) Officer Smith told the plaintiff to walk to booking for transport. At booking, Officer Simpson gave the plaintiff a pair of crutches and transported him to the Druid City Hospital. On June 21, 2012, Dr. Fowler performed surgery on the ankle and instructed jail personnel to return the plaintiff for a checkup and cast change in seven to ten days. The plaintiff was returned for a follow-up with Dr. Fowler 20 days later. At that visit, the plaintiff was told to return in two weeks, but jail personnel did not return him to Dr. Fowler for more than three weeks. (*Id.*) The plaintiff continued to complain of pain and a knot on his ankle. On October 26, 2012, the plaintiff was examined by Dr. Bobo. Dr. Bobo instructed the plaintiff to see an orthopedist after his release from jail. The plaintiff explained the surgery performed by Dr. Fowler, and Dr. Bobo told him the jail would not incur any more expense. As of the date of the amended complaint on September 9, 2013, the plaintiff has a large red spot on his ankle where he has been told a screw is coming out of his ankle.

**<u>Inadequate Medical Care</u>**

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991), quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.).

Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). As stated by the *Estelle* Court, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition

does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). Neither will a mere difference of opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. at 106-08.

In *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. *Barfield v. Brierton,* 883 F.2d 923, 938 (11th Cir. 1989).

Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir. 1989). Clearly, "not every injury or illness invokes the constitutional protection only those that are 'serious' have that effect." *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3rd Cir. 1976). Because

society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). In *Estelle,* the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical 'torture or a lingering death,'" to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." *Estelle*, 429 U.S. at 103. A "serious" medical need has been defined as "one that has either been diagnosed by a physician as mandating medical treatment or one that is so obvious that even a lay person would recognize the need for a doctor's attention." *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977). *See also Page v. Sharpe*, 487 F.2d 567, 569 (1st Cir. 1973).

The plaintiff states that he broke his ankle on June 12, 2012, and notified jail personnel of the injury. The plaintiff complains that he was not taken to the medical unit for three and one-half hours after the incident and was then examined by a nurse who gave him Tylenol and ice packs. The plaintiff does not provide any details of the incident which resulted in the injury, nor does he identify the person he notified that he was hurt. The plaintiff reports delays in being returned to the doctor after surgery, but does not allege that he suffered any adverse effects from the delays. It is the necessity and not the desirability of medical treatment sought which is important to

the determination of whether medical officials have exhibited deliberate indifference. *Woodall v. Foti,* 648 F.2d 268 (5th Cir. 1981). The plaintiff was taken to the medical unit within a few hours of injuring himself and transferred to the hospital the next morning. The plaintiff was provided surgery and follow-up appointments with the surgeon. The plaintiff implies that the care he received should have been different, but he does not explain how it should have been different or offer any facts to support a finding of deliberate indifference on the part of any of the defendants he has named. The plaintiff makes no specific claims of wrong doing against Maude Whatley. The plaintiff merely states that Maude Whatley operates the medical services. The plaintiff's claim that he was denied adequate medical care in violation of the Eighth Amendment is due to be dismissed as to Maude Whatley.

 As to Officers Thomas and Smith, the allegations of the plaintiff will require a response from each of them. Officer Thomas escorted the plaintiff to the medical unit after he broke his ankle. The plaintiff states that he requested a wheelchair, but Officer Thomas refused the request and told him he would have to walk on the ankle. (Doc. 5, p. 2 attached pages). After the ankle was examined, the nurse told Officer Thomas to return the plaintiff in a wheelchair. When Nurse Diane saw the plaintiff's ankle the next morning, she knew that the ankle was broken and told jail personnel the plaintiff needed to go to the hospital. Officer Smith was the detention officer and

told the plaintiff he would have to go to booking for transportation. When the plaintiff said he could not walk on his ankle, Officer Smith "said I had to because he wasn't pushing no damn inmate in a wheelchair." (Doc. 5, p. 2). The plaintiff was forced to walk to booking where Officer Simpson gave him some crutches and took him to Druid City Hospital in Tuscaloosa. The claims of the plaintiff, that Officer Thomas and Deputy Smith were deliberately indifferent to his serious medical needs, cannot be dismissed at this time.

**Mental Health Care**

The plaintiff also complains about the treatment he received for his mental illness. Prior to his arrest, the plaintiff was being treated by three doctors for a mental health disorder. Even though the plaintiff states that he suffers from a mental illness, he does not provide any information about his diagnosis, the symptoms he was experiencing, the medication he was taking prior to incarceration, or the need for treatment while in jail. The plaintiff reports only that he had an adverse reaction to the medication prescribed by Dr. Pointon, and Dr. Pointon told him he did not have a psychiatric disorder and refused to treat him further. The plaintiff was finally treated by another psychiatrist in June 2013 after his attorney wrote Chief Eric Bailey. (*Id*., p. 3). The plaintiff has failed to allege any facts to support a claim that he suffers

from a serious mental illness and that any of the defendants he has named in this action were deliberately indifferent to his need for medical treatment.

Even though the plaintiff makes serious allegations against Dr. Pointon, he failed to name him as a defendant. The plaintiff's complaint that the defendants he named failed to provide him adequate medical care for a chronic mental illness is due to be dismissed.

**Legal Mail**

The plaintiff complains that between March 28, 2012, and June 2, 2012, jail personnel opened inmates' legal mail searching for contraband. (Doc. 5, p. 3). On one occasion, Officer Hardaway opened and read a letter from the district court addressed to the plaintiff.[1]

To state a constitutional violation, the plaintiff must allege an intentional delay of or interference with his legal mail and prejudice to the claim which is subject to that mail. *See Richardson v. McDonnell,* 841 F.2d 120 (5th Cir. 1988). Incoming prisoner mail from courts, attorneys, and other court officers may be opened only in the presence of the inmate and only for the purpose of locating contraband; however, this mail may not be read by prison personnel. *Taylor v. Sterrett* 532 F.2d 462, 475 (5th Cir. 1976). "Prison officials may require that all legal mail be clearly marked as

---

[1] The plaintiff did not name Officer Hardaway as a defendant in this case.

such before receiving special treatment." *Jackson v. Mowery*, 743 F.Supp. 600, 606 (N.D. Ind. 1990).

The plaintiff does not claim that Officer Hardaway opened the mail outside the presence of the plaintiff. Furthermore, the plaintiff does not claim that any of the defendants he has named were responsible for opening his legal mail. This claim is due to be dismissed.

**Personal Property**

The plaintiff complains that on October 18, 2012, Officer Collard took soap and drinks which the plaintiff had purchased from the store. (Doc. 5, p. 3). On December 17, 2012, during a cell search, Officer Spencer took a t-shirt and two thermal shirts the plaintiff had purchased from the store. (*Id*.) The plaintiff was told by a supervisor that the items would be replaced. On January 28, 2013, officers threw away a pair of the plaintiff's glasses during a cell search. The plaintiff was told he would be reimbursed, but he has not been.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), the United States Supreme Court held that although the unintentional loss of a prisoner's personal property was a deprivation of property within the meaning of the Due Process Clause of the Fourteenth Amendment, the plaintiff was not deprived of property without due process where the State's post-deprivation tort remedy provided the process that was

due. In the companion cases of *Daniels v. Williams*, 474 U.S. 327 (1986), and *Davidson v. Cannon*, 474 U.S. 344 (1986), the United States Supreme Court reconsidered the holding in *Parratt*, that "the alleged loss, even though negligently caused, amounted to a deprivation." The Court in *Daniels* overruled *Parratt* to the extent that *Parratt* held that mere lack of due care by a state official may deprive a person of life, liberty, or property. The court in *Daniels* held that "the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon,* 474 U.S. 344, 347 (1986). Further, in *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), the Supreme Court stated:

> We hold that an unauthorized, intentional deprivation of property by a state employee does not constitute a violation of the due process requirements of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.

468 U.S. at 533.

The magistrate concludes that the plaintiff was not deprived of property without due process of law. Section 41-9-60 of the Code of Alabama provides for the State Board of Adjustment to consider claims against the State or its agents. If the

defendant was an agent of the State of Alabama, plaintiff has a remedy under the state statute. Should the Board of Adjustment deny the claim, the plaintiff may then bring an action in the courts of the State of Alabama for redress. *See Carmichael v. State Board of Adjustment*, 249 Ala. 542, 32 So.2d 216 (1947). The post-deprivation remedies available to the plaintiff under Alabama tort law are sufficient to satisfy due process under *Parratt* and *Hudson*. *See Parratt*, 451 U.S. at 543; *Hudson,* 468 U.S. 534-35. Therefore regardless of whether the alleged deprivation was unintentional or intentional, the plaintiff has not been deprived of property without due process of law because he has a legal means whereby he can be heard on this claim for compensation. Furthermore, the plaintiff did not name Officers Collard or Spencer as defendants and does not identify the officer he alleges threw away his glasses. The plaintiff's complaint that his personal property was lost or taken and not replaced is due to be dismissed.

**Conditions of Confinement**

The plaintiff complains generally about the conditions in the Tuscaloosa County Jail. The plaintiff claims the jail is overcrowded and that inmates are forced to sleep on the floor, eat on the floor, and are denied daily showers and adequate bedding.

Conditions of confinement claims by convicted prisoners are governed by the Eighth Amendment proscription against cruel and unusual punishment.  *Bell v. Wolfish*, 441 U.S. 520 (1979).  In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements:  (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), (2) the defendant[s'] 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes omitted), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189 (1994).  Whether a particular condition of confinement constituted cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *See Wilson v. Seiter*, 501 U.S. at 290.

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347,  101 S. Ct. 2392, 69 L. Ed.2d 59 (1981).  While it is the duty of jail officials to furnish prisoners with "reasonably adequate" food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd*

*in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons, *Rhodes v. Chapman*, 452 U.S. at 349, nor permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). As the Eleventh Circuit Court of Appeals observed in *Newman*: "[T]he Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." 559 F.2d at 291. "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988).

> [C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Rhodes v. Chapman*, 452 U.S. at 347.

"To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d at 1535. In order to establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id*. at 1535 (*quoting Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816, 107 S. Ct.

71, 93 L. Ed. 2d 28 (1986). *Accord Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

The plaintiff complains generally about conditions in the jail, but he does not allege that he was forced to sleep on the floor, eat on the floor, or was denied adequate bedding or a shower. <u>Extreme</u> deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004). Although the conditions the plaintiff describes may have been uncomfortable, and perhaps even harsh, the plaintiff has not described conditions which involved the wanton and unnecessary infliction of pain. The plaintiff's complaint about the conditions in the Tuscaloosa County Jail does not state a claim of constitutional proportion and is due to be dismissed.

**Tuscaloosa County Jail**

The plaintiff named the Tuscaloosa County Jail as a defendant; however, the Tuscaloosa County Jail is not a legal entity capable of being sued. *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992); *White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991). Accordingly, a cause of action may not be maintained against the Tuscaloosa County Jail, and the Tuscaloosa County Jail is due to be dismissed as a defendant.

## **R**ECOMMENDATION AND **N**OTICE OF **R**IGHT TO **O**BJECT

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that this action be DISMISSED as to the Tuscaloosa County Jail, Maude Whatley and Chief of Operations Eric Bailey, pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2).  The magistrate judge further RECOMMENDS that the claims of deliberate indifference to his serious medical needs against Officer Thomas and Deputy Smith be REFERRED to the undersigned magistrate judge for further proceedings.

Any party who objects to this report and recommendation must, within fourteen (14) days from the date on which it is entered, file specific written objections with the clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included**.  Failure to do so will bar any later challenge or review of the factual findings or **legal conclusions** of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.C. 1111, 106 S.Ct. 899, 88 L.Ed. 2d. 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)(*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection

is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from the final judgment entered by or at the direction of the district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DONE this 7th day of January, 2014.

*[signature]*
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE